**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| STAR CHAIN, INC., et al., | ) | CASE NO.  19-65768-wlh |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |

**WALLIS BANK'S RESPONSE TO
DEBTORS' LIMITED OBJECTION
TO WALLIS STATE BANK'S CREDIT BID**

Wallis Bank f/k/a Wallis State Bank ("Wallis") hereby responds to the Debtors' Limited Objection to Wallis's Credit Bid, as follows:

In their Limited Objection, the Debtors assert, *without support and with misplaced concern*, a variety of conduct and inaction by Wallis that they contend merits the Court's attention.  They first note that Wallis has not filed a credit bid, and that the Debtors therefore do not know what form Wallis' credit bid will take "despite numerous inquiries by the Debtor's professionals."  They continue that Debtors and other parties are "completely in the dark" with regard to how Wallis plans to consummate any potential credit bid.

As an initial matter, *the deadline in the Order approving the bidding procedures provides that Wallis's Initial Overbid is not due before March 23, 2020***,** one week from today.  Wallis cannot formulate its bid until it receives from

the Debtors the total required "cash component" of its bid, that was due on March 19, 2020 under the bidding procedures Order. The Court has today notified the Debtors to provide that information today. *Wallis also requires the final "cure costs" of the contracts and leases being assumed and assigned in the transaction, which won't be decided until after tomorrow's hearing.*

As every party in this case has been notified in numerous ways, the proposed asset sale ultimately requires approval by the Checkers franchisor. The Debtors admit in their objection that they have been coordinating with Checkers' management, as has Wallis. As the Debtors correctly observe, there are a limited number of qualified candidates to purchase these restaurants, because any operator must have "the qualifications, financial backing and back office infrastructure" needed to support acquisition of these restaurants.

The Debtors' "data room" contains a document setting forth the numerous well-defined qualifications that Checkers requires any prospective franchisee to satisfy. The Debtors' "Bidding Procedures Information Sheet" in that data room states that every bid must acknowledge that assumption and assignment of any franchise agreement with Checkers requires satisfaction of those qualifications and approval by Checkers. ***Thus, Wallis's communication with Checkers franchisor and with its franchisees is unavoidable in this case and is required to successfully accomplish these Debtors' liquidation***.

***The Debtors insinuate that, while they have freely communicated with virtually every qualified potential operator of these restaurants apparently on an ongoing basis, Wallis engaged in misconduct by communicating with those same parties.*** They represent that Mr. Friedberg, who apparently is managing the sale process for the Debtors, has been identifying, engaging and following up with prospective bidders, yet Wallis is criticized by implication for engaging in the same activity.

The Debtors continue their "limited objection" by attempting to use *inadmissible hearsay* to the effect that "Mr. Friedberg has been informed from multiple parties that Wallis has been in detailed discussions with multiple prospective parties who Debtors have also engaged.

On Friday, March 13th, Mr. Friedberg learned more details regarding Wallis having communicated with multiple Prospects to solicit offers to Wallis regarding how much debt they would assume to partner with Wallis as part of their desire to credit bid in the sales process." ***Wallis cannot fairly be expected to respond such vague, conclusory assertions, and Wallis objects to any consideration of such hearsay.*** Wallis respectfully submits that due process and fundamental fairness require that any claimed "facts" be shown by admissible evidence from witnesses whose statements may confirmed or rebutted by Wallis witnesses and Wallis objects to Mr. Friedberg's Declaration on that ground.

The Debtors then state that their "concern is that Wallis could effectively be running a parallel sales process by soliciting offers from current Checkers' franchisees and potential bidders to partner with Wallis rather than bidding on the stores directly with the Debtors' sale process." Without any evidence in support, the Debtors claim that Wallis's "actions have certainly caused confusion amongst the pool of potential bidders and have potentially chilled the bidding process. Adding to this confusion are communications Wallis may have had with Prospects about transacting non-Debtor locations in addition to the Debtor locations."

This objection seems cloaked in the pretense that Wallis is engaged in some nefarious misconduct and that the Debtors are completely surprised that Wallis intends to credit bid for the assets and re-sell them to an existing Checkers operator or qualified potential franchisee. ***Such a position is, of course, inconsistent with incontrovertible facts and the well-known history in this case.*** The assets being offered for sale are being sold as "going concerns", in order to bring their highest and best price. The "stalking horse" offer by Sparky Burger, LLC is based upon that fundamental principle. The goodwill value of these businesses, which may be their most valuable single asset, and the employment of the people who work in these restaurants, can only be preserved by their substantially uninterrupted operation.

Under the Bankruptcy Code, "credit bidding" at a sale under 11 U.S.C.

§363(b) is generally a right for secured lenders such as Wallis. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 566 U.S. 639, 132 S. Ct. 2065 (2012). As the Court noted in that case, "[t]he ability to credit-bid helps to protect a creditor against the risk that its collateral will be sold at a depressed price. It enables the creditor to purchase the collateral for what it considers the fair market price (up to the amount of its security interest) without committing additional cash to protect the loan."

That right is provided in §363(k), which states that at a sale under §363(b) of property that is subject to a lien that secures an allowed claim, unless a court for cause orders otherwise, the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property. E.g., *In re CS Mining, LLC,* 574 B.R. 259, 261 (Bankr. D. Utah 2017). The existence of that right is recognized and strengthened by §1129(b)(2)(A), which requires that holders of allowed secured claims be permitted to credit-bid in an asset sale under a cramdown plan.

***Nothing in those statutes or in any relevant case law applying and construing them requires a successful credit-bidding creditor to hold or operate the purchased assets or limits its right to convey those assets to a subsequent purchaser***. Nothing in the Order approving the bidding procedures contains any such limitation. The Debtors and the Unsecured Creditors Committee proposed

the procedure for the sale of these assets, and drafted the Order approving the bidding procedures.  Wallis has fully complied with all requirements to date under that Order.  Wallis has made plain since a liquidation sale was first suggested that it intended to credit bid for those assets.  Wallis filed in the public record in these cases the required notice of its intention and filed its proof of claim in that record showing that its claim exceeded $4 million.

*Had the Debtors desired to limit the Bank's right to credit bid, its structure for the transaction, or to limit the Bank in seeking an operator for these restaurants from the admittedly limited number of potential buyers, it could have proposed those limitations for the Court's consideration.  Instead, the Debtors now seek to retroactively impose such restrictions upon Wallis ex post facto.  Although the Debtors do not make any request for any action by the Court, it seems plain that they intend to seek Wallis' disqualification from credit bidding.*

A successful credit bid "by definition . . . becomes the value of the lender's security interest in the collateral." *Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.),* 432 F.3d 448, 461 (3d Cir. 2006) (brackets omitted).  "The practical rationale for credit bidding is that a secured lender would not outbid a bidder unless the lender believed it could generate a greater return on the collateral than the return for the lender represented by the bidder's offer. . . . Conversely, if a bidder believed that a secured lender was attempting to swoop in and take the

collateral below market value and keep the upside for itself, that bidder presumably would make a bid exceeding the credit bid. In this manner, credit bidding is a method of ensuring to a secured lender proper valuation of its collateral at sale." *In re Phila. Newspapers, LLC*, 599 F.3d 298, 321 (3d Cir. 2010).

"***Although some may argue that credit bidding chills cash bidding, that argument underwhelms; credit bidding chills cash bidding no more than a deep-pocketed cash bidder would chill less-well-capitalized cash bidders***. Having the ability to pay a certain price does not necessarily mean there is a willingness to pay that price. Id.

> "For instance, if a would-be bidder knows that Warren Buffett plans to attend an auction, she is also surely aware that Buffett can top her reservation price for any or all of the assets on the block. Yet nobody proposes to ban wealthy cash bidders from participating in a bankruptcy auction. . . . Would-be bidders understand that a deep-pocketed player's ability to top their reservation price does not imply a willingness to do so. Warren Buffett did not become wealthy by overpaying for things, so it is possible, indeed, probable, that his reservation price for an asset at auction will be beneath that of another buyer. And buyers know this in advance. The same logic holds for secured creditors."

Buccola and Keller, *Credit Bidding and the Design of Bankruptcy Auctions*, 18 Geo. Mason L. Rev. 99, 123 (2010).

The modification or denial of credit bid rights for cause under § 363(k) should be an extraordinary exception that is used only upon equitable considerations (e.g., competing claims, collusion, or other fraudulent or bad faith acts). Compare In re Aéropostale, Inc., 555 B.R. 369, 414-15 (Bankr. S.D.N.Y. 2016) with In re Aloha Airlines, Inc., 2009 Bankr. LEXIS 4588, 2009 WL 1371950 (Bankr. D. Haw. May 14, 2009).  Where a creditor holds an uncontested secured claim, it should ordinarily be permitted to bid at a §363 sale of its collateral regardless of its intrinsic impact on other bidding.  *In re RML Dev., Inc.,* 528 B.R. 150, 155 n.11 (Bankr. W.D. Tenn. 2014)

Wallis recognizes that its right to credit bid is not absolute. See *In re Fisker Auto. Holdings, Inc.*, 510 B.R. 55, 59 (Bankr. D. Del. 2014).  Section 363(k) of the Bankruptcy Code provides that a party may credit bid "unless the court for cause orders otherwise . . . ." 11 U.S.C. § 363(k) (emphasis added).  The term "cause" is not defined by the Bankruptcy Code, and it is left to the court to determine whether cause exists on a case-by-case basis. See *In re Olde Prairie Block Owner, LLC*, 464 B.R. 337, 348 (Bankr. N.D. Ill. 2011); *In re River Road Hotel Partners, LLC,* 2010 Bankr. LEXIS 5933, 2010 WL 6634603, at *1 (Bankr. N.D. III. Oct. 5, 2010)

("Section 363 gives courts the discretion to decide what constitutes 'cause' and the flexibility to fashion an appropriate remedy by conditioning credit bidding on a case-by-case basis."), *aff'd, River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642 (7th Cir. 2011)).

The decision of whether to limit or deny credit bidding based on cause is within the discretion of the court. See In re Olde Prairie, 464 B.R. at 348. But this "discretion does not give the bankruptcy court the authority to act arbitrarily or to be freewheeling. In other words, the standard is not standardless." *In re RML Dev., Inc.,* 528 B.R. 150, 155 (Bankr. W.D. Tenn. 2014) quoting *In re Davis*, 237 B.R. 177, 182 (M. D. Ala. 1999).

"Intrinsically, acting 'for cause' looks to the court's equity powers that allow the court to balance the interests of the debtor, its creditors, and the other parties of interests in order to achieve the maximization of the estate and an equitable distribution to all creditors." *In re RML*, 528 B.R. at 155 (citations omitted). But "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." Id. (quoting *Law v. Siegel,* 134 S. Ct. 1188, 1194-95, 188 L. Ed. 2d 146 (2014)).  The "modification or denial of credit bid rights should be the extraordinary exception and not the norm." *In re RML*, 528 B.R. at 156.

Courts have denied a secured creditor's right to credit bid based upon

seriously inequitable conduct that directly impacts the estate or the bidding process.  See *In re Aéropostale, Inc., supra*, 555 B.R. 369 (collecting cases).  Courts also have limited the right to credit bid when the validity of a creditor's lien is in dispute, *In re Daufuskie Islands Props., LLC*, 441 B.R. 60, 64 (Bankr. D.S.C. 2010), and where the party seeking to credit bid has failed to comply with the procedural requirements established by the court for the sale of the collateral. See *Greenblatt v. Steinberg*, 339 B.R. 458, 463 (N.D. Ill. 2006) (denying right to credit bid due to failure to comply with sale procedures order).  None of those circumstances exist in these cases.

But any decision to limit or deny a secured creditor's right to credit bid for "cause" must be based upon remedial, rather than punitive, grounds. *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 315-316 (3d Cir. 2010);  *In re N.J. Affordable Homes Corp.*, 2006 Bankr. LEXIS 4498, 2006 WL 2128624, at *16 (Bankr. D. N.J. June 29, 2006) (stating that cause is "intended to be a flexible concept enabling a court to fashion an appropriate remedy on a case-by-case basis") (emphasis added).

It therefore would be incumbent upon the Debtors to articulate some actual impact upon the estate or the bidding process, which they have failed to do.  For all these reasons, the Court should reject the Debtors' "limited objection" to the extent it seeks to abridge Wallis Bank's ability to credit bid for its collateral in this case.

                                      Respectfully submitted,
                                      */s/ Evan M. Altman*
                                      Evan M. Altman, Esq.
                                      Georgia Bar No. 014066

Northridge 400
8325 Dunwoody Place, Bldg. 2
Atlanta, GA 30350
Tel: (770) 394-6466
Fax: (678) 405-1903
evan.altman@laslawgroup.com

                                      /*s/ James C. Morton*
                                      James C. Morton
                                      Georgia Bar No.  526025

Suite 1350, Two Midtown Plaza
1349 West Peachtree Street            *Counsel for Wallis Bank*
Atlanta, GA 30309
Phone:  (404) 966-5133
Fax:       (404) 806-2525
james@morton-law.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this date I caused to be filed the foregoing WALLIS BANK'S RESPONSE TO DEBTORS' LIMITED OBJECTION TO WALLIS STATE BANK'S CREDIT BID using the Court's CM/ECF system, which will cause a copy of same to be served electronically upon all parties in interest appearing in this case or their counsel of record.

wgeer@wiggamgeer.com

Will B. Geer, Esq.,
WIGGAM & GEER, LLC
50 Hurt Plaza, SE, Suite 1150
Atlanta, Georgia 30303

wrountree@rlklawfirm.com

William A. Rountree, Esq.,
Rountree Leitman & Klein, LLC
Century Plaza I, Suite 175
2987 Clairmont Road
Atlanta, GA 30329

david.s.weidenbaum@usdoj.gov

David Weidenbaum, Esq.,
Office of The United States Trustee
Room 362
Richard Russell Building
75 Spring Street, S.W.
Atlanta, GA 30303

gnail@pgnlaw.com

Garrett A. Nail, Esq.,
Portnoy, Garner, Nail LLC
Suite 460
3350 Riverwood Pkwy
Atlanta, GA 30339

jwatson@GGGlaw.com

Jason H. Watson, Esq.,
Morris, Manning & Martin, LLP
3343 Peachtree Road, NE
Suite 1600
Atlanta, GA 30326

michael@roblgroup.com

Michael D. Robl, Esq.,
Robl Law Group, LLC
3754 Lavista Road
Suite 250
Tucker, GA 30084

This 16th day of March, 2020.

                                                              s/ *Evan M. Altman*
                                                              Evan M
                                                              Georgia Bar No. 014066